UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

vs. Cr.No.: 07-124-02T

DAVID G. CHAVEZ

**DEFENDANT DAVID G. CHAVEZ'S OBJECTIONS TO THE PRESENTENCE REPORT**

The defendant, David G. Chavez ("Chavez") hereby submits his objections to the Pre-sentence Report ("PSR") prepared by the United States Probation Officer for the District of Rhode Island. More specifically, Chavez lodges the following objections to the PSR:

(i) The PSR erroneously attributes $85,429.52 in total losses to Chavez resulting in an increase in the offense level by 8. **See** **PSR at pg. 5 ¶ 20**. The correct loss attributable to Chavez is $64.800.40 which calls for an increase in the base offense level by 6. **See** **U.S.S.G. § 2B1.1(b)(1)(D)**.

(ii) The restitution award, if any, should be limited to a maximum of $48,300.00.

Chavez relies upon the attached memorandum of law in support of his objections to the PSR.

For all the foregoing reasons, the defendant respectfully requests that his objections be sustained and that the Court impose a fair and equitable sentence in accordance with its rulings on the objections raised by this defendant.

Respectfully submitted,
Defendant, David G. Chavez,
By and through his Attorney,

Lepizzera & Laprocina Counsellors at Law Ltd.
Michael J. Lepizzera, Jr. #4995
301 Metro Center Blvd. Suite 102
Warwick, Rhode Island 02886
Tel: (401) 739-7397
Fax: (401) 384-6950

**CERTIFICATE OF SERVICE**

I, Michael J. Lepizzera, Jr. hereby certify that I emailed a true and accurate copy of the within document to Kristin Ann Mattias, U.S. Probation Officer and Sandra Beckner, AUSA on this 21st day of February, 2008

Michael J. Lepizzera, Jr.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

vs. Cr.No.: 07-124-02T

DAVID G. CHAVEZ

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DAVID G. CHAVEZ'S OBJECTIONS TO THE PRESENTENCE REPORT**

## I. Introduction

The defendant, David G. Chavez ("Chavez"), is scheduled to appear before the Court on March 13, 2008 for sentencing on his guilty plea to thirteen (13) counts of a twenty-six (26) count indictment. Chavez and his counsel are in receipt of the Pre-Sentence Report ("PSR") prepared by the United States Probation Officer for the District of Rhode Island ("Probation Officer"). Chavez has lodged objections to the PSR and therefore submits this memorandum of law in support of those objections.

## II. The loss attributable to Chavez is $64,800.40 as opposed to $85,429.52 arrived at by the Probation Officer in the PSR.

The PSR erroneously attributes $85,429.52 in total losses to Chavez resulting in an increase in the offense level by 8. **See PSR at pg. 5 ¶ 20**. The correct loss attributable to Chavez is $64,800.40 which calls for a smaller six (6) level increase in the base offense level. **See U.S.S.G. § 2B1.1(b)(1)(D)**.

The source of the discrepancy between the losses arrived at by the Probation Officer and the losses claimed by Chavez stem from the four (4) corners of the indictment. As set forth above, the original indictment charged Chavez with twenty-six

(26) counts. Count 1 is a count charging Chavez with conspiracy to commit bank fraud in violation of 18 U.S.C. §1349. The remaining Counts (Counts 2-26) charged Chavez with committing bank fraud in violation of 18 USC § 1344 and 2. Counts 2 through 26 each represent a separate instance where a co-defendant – not Chavez – cashed or attempted to cash a counterfeit check drawn on a Citizens Bank checking account.[1]

It is important to take a quick look at the twenty-five counts of bank fraud alleged in the indictment in order to fully comprehend the basis for the instant objection. As the Court will see below, each of the twenty-five (25) bank fraud counts neatly lay out the following information: (i) the date the counterfeit check was negotiated or attempted to be cashed: (ii) the check number: (iii) the amount of the check; and (iv) the name of the account holder whose account was compromised. For the convenience of the Court, the defendant has culled the bank fraud counts from the indictment and arranged them immediately below in three (3) separate boxes:

**BOX – 1**

| COUNT | DATE | CHECK NO. | AMOUNT | ACCOUNT NAME |
|---|---|---|---|---|
| 2 | June 22, 2007 | 10240 | $624.63 | Phoenix Donuts, Inc. |

[1] Notwithstanding his lack of participation in personally negotiating the checks at Citizen's Bank, Chavez fully understands and agrees that he is criminally responsible for the acts of others in their quest to cash checks which were fraudulently manufactured *as a result of information Chavez supplied to John Perras*. As the Court will soon go on to read, the thrust of the Defendant's objection concerning the issue of loss goes to whether or not the Court finds that Chavez had any involvement in supplying bank information to his co-defendant regarding the accounts held in the name of Phoenix Donuts, Inc. and Capital City Concrete, Inc.

| | | | | |
|---|---|---|---|---|
| 3 | June 22, 2007 | 10241 | $524.63 | Phoenix Donuts, Inc. |
| 4 | June 22, 2007 | 10242 | $524.63 | Phoenix Donuts, Inc. |
| 5 | June 22, 2007 | 10243 | $656.87 | Phoenix Donuts, Inc. |
| 6 | June 22, 2007 | 10245 | $631.63 | Phoenix Donuts, Inc. |
| 7 | June 22, 2007 | 10246 | $628.83 | Phoenix Donuts, Inc. |
| 8 | June 22, 2007 | 10252 | $428.83 | Phoenix Donuts, Inc. |
| 9 | June 22, 2007 | 10253 | $616.81 | Phoenix Donuts, Inc. |
| 10 | June 22, 2007 | 10254 | $566.13 | Phoenix Donuts, Inc. |
| 11 | June 22, 2007 | 10255 | $426.53 | Phoenix Donuts, Inc. |
| **TOTAL** | | | **$5,629.52** | |

As illustrated above, Counts 2 through 11 all stem from checks negotiated from the checking account held in the name of Phoenix Donuts, Inc. Those checks notably were all negotiated on the same day (June 22, 2007). The total losses emanating from the activity on this account comes to $5,629.52.

The next three (3) counts in the indictment. involve fraudulent check activity on an account held in the name of Capital City Concrete, Inc.

**BOX - 2**

| COUNT | DATE | CHECK NO. | AMOUNT | ACCOUNT NAME |
|---|---|---|---|---|
| 12 | June 28, 2007 | 675510 | $5,000.00 | Capital City Concrete, Inc. |
| 13 | June 29, 2007 | 675511 | $5,000.00 | Capital City Concrete, Inc. |
| 14 | June 29, 2007 | 675512 | $5,000.00 | Capital City Concrete. Inc. |
| **TOTAL** | | | **$15,000.00** | |

The remaining counts (Counts 15-26) concern fraudulent checks cut from the following accounts: (i) Law Office of Sonja B. Selami (Counts 15-17 and 21-25): (ii) Capital Trust (Counts 18-19 and 26): and (iii) The Computer Merchant. Ltd. (Count 20).

**BOX - 3**

| COUNT | DATE | CHECK NO. | AMOUNT | ACCOUNT NAME |
|---|---|---|---|---|
| 15 | July 26, 2007 | 8467 | $4,000.00 | Law Office of Sonja B. Selami |
| 16 | July 26, 2007 | 8473 | $3,800.00 | Law Office of Sonja B. Selami |
| 17 | July 26, 2007 | 8474 | $2,600.00 | Law Office of Sonja B. Selami |
| 18 | August 2, 2007 | 7988 | $3,800.00 | Capital Trust |
| 19 | August 2, 2007 | 7991 | $2,600.00 | Capital Trust |
| 20 | July 23, 2007 | 114461 | $3,000.00 | The Computer Merchant, Ltd. |
| 21 | July 25, 2007 | 8649 | $2,800.00 | Law Office of Sonja B. Selami |
| 22 | July 25, 2007 | 8470 | $3,500.00 | Law Office of Sonja B. Selami |
| 23 | July 26, 2007 | 8471 | $3,200.00 | Law Office of Sonja B. Selami |
| 24 | July 30, 2007 | 8492 | $4,000.00 | Law Office of Sonja B. Selami |
| 25 | July 26, 2007 | 8468 | $9,500.00 | Law Office of Sonja B. Selami |
| 26 | August 2, 2007 | 7995 | $22,000.00 | Capital Trust |
| **TOTAL** | | | **$64,800.00** | |

With respect to the bank fraud charges, Chavez pled guilty to Counts 15 through 26 which are the counts found in Box-3. The total loss found in Box-3 is $64,800.00.

Chavez did not plead to Counts 2 through 13 which are found in Box-1 and Box-2 above. Those are the accounts held in the name of Phoenix Donuts, Inc. and the Capital City Concrete, Inc. The combined loss for Counts 2 through 13 comes to $20,629.52.[2]

Chavez submits that he is not responsible for the losses listed in either Box 1 or Box 2. Instead, his loss calculation should be limited to Box-3 which represents the twelve (12) bank fraud counts he pled to back in December of 2007.

Chavez appreciates the concept of "relevant conduct" enunciated in the United States Sentencing Guidelines. Chavez further understands that a defendant can not manipulate a loss calculation contemplated under U.S.S.G. § 2B1.1(b)(1) or other relevant conduct which must be considered by the Court in fashioning an appropriate sentence under the United Sentencing Guidelines by simply picking and choosing which counts to plead to in the indictment. The defendant agrees that the Sentencing Guidelines just don't work that way. Therefore, this Court should not misconstrue Chavez's objection to be that Chavez can only be held legally responsible for the losses tied to the counts he pled to back in December at his change of plea hearing. Chavez is not advocating this position at all.

However, what Chavez is suggesting to this Court is that he should not be held responsible for the losses found in Box-1 and Box-2 because he did not supply this bank

[2] This is calculated by adding up the losses found in Box-1 and Box-2.

Phoenix Donuts, Inc. losses (Box-1) + Capital City Concrete, Inc. losses (Box-2) = Total Box 1& 2 losses

**$5,629.52** + **$15,000.00** = **$20,629.52**

account information (Phoenix Donuts and Capital City) to the ring leader, John Perras. This was the basis for not pleading to Counts 2 through 14 in the first place. It wasn't by random selection that this defendant elected to plea guilty to thirteen (13) of the counts with the remaining thirteen (13) counts to be dismissed at the time of sentencing. There would have been no benefit to the defendant for the government agreeing to drop thirteen (13) of the charges at the time of sentencing had in fact Chavez supplied Perras with the Phoenix Donuts and Capital City bank account information. Regardless if those particular counts were dropped or not, Chavez admittedly would have been responsible for those losses had he provided Perras with the relevant bank account information to manufacture those particular counterfeit checks.

Thus, the test here for determining the "relevant conduct" attributable to Chavez is not whether Counts 2-14 are found within the four corners of the indictment. Instead, the test is simply whether David G. Chavez provided John Perras with the relevant account information enabling Perras and the other co-defendants to defraud Citizen's Bank. The burden is on the government to establish a semblance of the loss attributable to this defendant by a preponderance of the evidence. United States v. Vaknin, 112 F.3d 579, 583 (1st Cir. 1997).

Again, if Chavez gave Perras the information, he is on the hook for the losses. If he didn't give his co-defendant the information, then he shouldn't be held responsible for those losses. Under this latter scenario, the loss calculation should be limited to $64,800.00 found in Box-3 with an increase of six (6) levels as opposed to an eight (8) level increase proposed by the PSR.

While the defendant is a bit fuzzy in identifying the exact bank account information he supplied to Perras, the defendant knows that he could not have provided

any information concerning Phoenix Donuts and Capital City Concrete, Inc. because Perras did not solicit or approach Chavez for any information until the month of July.[3] The checks found in Box-1 and Box-2 were all cashed in the month of June ranging in time from June 22, 2007 through June 29, 2007. It is impossible for the defendant to be responsible for this particular criminal activity.

This should come as no surprise to the Government. When we refer to defendant John Perras, we are not talking about someone new to the world of bank fraud or counterfeiting. It would be one thing if John Perras had never been involved in counterfeiting checks prior to this particular criminal activity. It might be different if John Perras had no previous instances of committing fraud upon banks and financial institutions. It would be different if Mr. Perras had no proclivity to engage in this type of fraudulent activity. However, this is not the case. This wasn't Perras' first foray in the counterfeiting business. While Chavez is not currently in possession of Perras complete criminal history, it is abundantly clear in reviewing the relevant records that counterfeiting, forgery and bank fraud is Perras' thing in life. Perras knew exactly what he was doing when he solicited Chavez for the bank account information because he has done this very type of thing time and time again over a long period of time predating his involvement with Chavez.[4]

[3] An example of the defendant's fuzziness is Count 20 of the Indictment. The defendant ultimately accepted responsibility and pled guilty to Count 20 which involves a single bank fraud count for a $3,000.00 check from an account in the name of The Computer Merchant, Ltd. The defendant to this day does not recall if he ever supplied this information to Perras but he elected to accept responsibility for this particular count due to the timing of this check. In fact, a review of the discovery shows that Perras may have received this banking information from another co-defendant who was employed at The Computer Merchant, Ltd.

[4] While not deemed an official record, a review of the Rhode Island Court Connect System provided by the State of Rhode Island Judiciary shows Perras to have 155 criminal records which include approximately nine (9) separate felony cases involving counterfeiting and forgery and numerous probation violations for committing fraud while on probation for fraud convictions. This criminal history spans back to 2002 well before he lured Chavez into this conspiracy.

Perras obviously has had a lot of practice with counterfeiting checks and forgery. He knew exactly what to do with the information provided by Chavez. This was not a first time go around for Perras while it was for Chavez. He obviously had access to other sources of bank information other than Chavez. Chavez should not be found criminally responsible for information he did not provide to Perras.

The defendant believes this issue may require an evidentiary hearing if the government is not willing to concede that the loss is limited to $64.800.00. Again, the government bears the burden of proof on this issue.[5]

## II. <u>Miscellaneous Factors</u>

### A. <u>The Defendant fully cooperated from the onset of his arrest.</u>

This defendant fully cooperated with both the local and federal law enforcement authorities who participated in this investigation. At the time of his initial arrest on August 15, 2007, Chavez readily cooperated with authorities.[6] The defendant did not invoke his right to counsel but knowingly, voluntarily and intelligently disclosed what he knew about the criminal activity being investigated. He readily acknowledged his role in the offense and explained how he provided account information to John Perras.

### B. <u>The Defendant's role in the conduct was limited to providing the bank account information.</u>

While this defendant's role in the offense can <u>not</u> be classified as either a minor or minimal role as those terms are defined under the Sentencing Guidelines, it should be noted that this defendant's only role in the offense was providing the account information to John Perras. Admittedly, this was an important cog in the criminal wheel.

---

[5] Merely because the government may have mistakenly included Counts 2 through 14 in the indictment against Chavez does not ipso facto make it right.

[6] The PSR references an arrest date of October 2, 2007. The initial arrest occurred back in August of 2007 with Chavez first being charged with state court forgery and counterfeiting charges. The defendant was released and subsequently arrested in early October on the instant federal indictment.

However, this defendant did not take any further action after supplying the information to Perras. Chavez did not communicate with the other co-defendants.[7] Chavez did not manufacture any counterfeit checks. Nor did he present or attempt to present any of the counterfeit checks to Citizen's Banks. Chavez did not share in any of the proceeds ultimately embezzled from the bank.[8] Chavez only mistake – which indeed was a fatal mistake – was to acquiesce to Perras' repeated requests for Chavez to give him account information for a couple of customers.[9]

### C. <u>Chavez will likely be deported after serving the term of imprisonment imposed by this Court.</u>

While this defendant became a legal permanent resident of the United States on June 21, 1999, he failed to convert this permanent residency status into citizenship. The defendant will likely be deported after serving the term of imprisonment imposed by this Court. This Court can take this into consideration in fashioning the appropriate sentence.

### D. <u>The restitution order to be imposed, if any, should be limited to $48,300.00.</u>

This Court has the statutory authority to issue a restitution award in favor of the victim in this case. 18 U.S.C. § 3663. This Court should weigh the defendant's ability to

---

[7] Chavez was not even aware of the other participants or exactly how Perras was going to obtain monies from the accounts.

[8] The only payment that Chavez received was a $200.00 payment from Perras for the account information which netted the other co-defendants $48,300.00. This figure represents the actual monies realized by Chavez's co-defendants from the bank account information he supplied to Perras. The government has reported the bank's actual losses to be $68,929.52 which represents all of the counterfeit checks listed in the indictment which Chavez's co-defendants were able to successfully cash.

[9] Chavez finally succumbed to his financial pressures and decided to give Perras the bank account information. Chavez knew it was wrong when he did it but he gave in and provided Perras with the confidential information. Chavez gave Perras different banking information on a couple of separate occasions as Perras repeatedly told Chavez that the information Chavez gave him previously was "no good" and "nothing happened" with the other information. In essence, Perras was also duping Chavez telling Chavez that nothing came of the previous banking information handed over to Perras.

pay restitution along with the fact that the defendant will likely be deported at the conclusion of serving his jail sentence.

If this Court is inclined to issue restitution in favor of the victim, those losses should be kept to the losses attributable to the information supplied by Chavez. Those losses are restricted to the checks found in Box-3 that were in fact negotiated and honored by Citizen's Bank.[10] Therefore, the restitution order to be entered against Chavez, if any, should not exceed $48,300.00.

## III. Conclusion

Chavez is only responsible for the loss caused from the bank account information he supplied to Perras. The information Chavez provided to Perras coincides with the guilty pleas he entered to the various bank fraud counts alleged in the Indictment (Counts 15-26). Therefore, the loss calculation is limited to $64,800 resulting in a six (6) level enhancement instead of the eight (8) level increase proposed by the Probation Officer.

If the Court should sustain this objection, the following guideline calculation would result:

| | | |
|---|---|---|
| Base Offense Level: | § 2B1.1(a)(1) | 7 |
| Specific Offense Characteristics (Loss) § 2B1.1(b)(1)(D) | | 6 |
| Specific Offense Characteristic (Access Device) § 2B1.1(b)(10)(B)(i) | | 2 |
| Adjusted Offense Level | | 15 |
| Adjustment for Acceptance of Responsibility | | -2 |
| **Total Offense Level** | | **13** |

[10] Some of the checks found in Box-3 were successfully cashed while other checks were not honored and thus constitute only attempts to commit bank fraud. Out of the $64,800.00 of total checks listed in Box-3, the government proffers that $16,500.00 of those fraudulent checks were not negotiated and constitute only individual attempts to commit bank fraud. This leaves a total of $48,300.00 in actual losses stemming from information Chavez provided to Perras.

This leaves the defendant with a guideline range of 12-18 months in Zone D of the Sentencing Table.

The Court should take into consideration all of the miscellaneous factors and the defendant's strong work ethic and personal background in fashioning a fair and equitable sentence.

For all the foregoing reasons, the defendant respectfully requests that the Court sustain the defendant's objection to the PSR and impose the appropriate sentence in accordance with said objection.

Respectfully submitted.
Defendant, David G. Chavez,
By and through his Attorney,

Michael J. Lepizzera, Jr.
Lepizzera & Laprocina Counsellors at Law Ltd.
Michael J. Lepizzera, Jr. #4995
301 Metro Center Blvd. Suite 102
Warwick, Rhode Island 02886
Tel: (401) 739-7397
Fax: (401) 384-6950

**CERTIFICATE OF SERVICE**

I, Michael J. Lepizzera, Jr. hereby certify that I emailed a true and accurate copy of the within document to Kristin Ann Mattias. U.S. Probation Officer and Sandra Beckner, AUSA on this 21st day of February, 2008

Michael J. Lepizzera, Jr.
Michael J. Lepizzera, Jr.